## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| YUSUF IBRAHIM, | : | |
| | : | Case No. 3:19-cv-5021 (BRM) (TJB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DOCTOR FLORA DEFILIPPO, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Motions to Dismiss filed by Defendants Tina Cortes, Piepro Cupo, and Mervin Ganesh (collectively, "DOC Defendants") and Dr. Flora DeFilippo, Scott Hornberger, Emma Bushong[1], and Diana Schmidt (collectively, "Mental Health Defendants") seeking to dismiss Plaintiff Yusuf Ibrahim's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 64-1 & 65-1.) Plaintiff filed his Opposition to Defendants' Motion and Motion to Strike Pleadings as Insufficient (ECF No. 66) and the DOC Defendants and the Mental Health Defendants filed Replies (ECF Nos. 71 & 72). Having reviewed the parties' submissions filed in connection with the Motion and, having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion to Dismiss is **GRANTED** in part and Plaintiff's Motion to Strike is **DENIED**.

---

[1] Plaintiff refers to this individual as "Bushon" in his original complaint and "Bushong" in his amended complaint.

I. BACKGROUND[2]

A. Procedural History

Plaintiff filed his original *pro se* complaint on February 7, 2019 raising claims against the following defendants: Dr. Flora DeFilippo, Dr. Nuwochocco, Dr. Diana Schmidt, Dr. Nieves, Dr. Scott Hornberger, Dr. Emma Bushong, Bruce Davis, Marven Ganesh, Amy Enrich, David Richards, Tina Cortes and Officer Piepro Cupo.[3] (ECF No. 1 "Compl.") Plaintiff filed a motion to amend his complaint of August 2, 2019. (ECF No. 46.) The Court terminated Plaintiff's motion to amend on December 6, 2019 and instructed Plaintiff to file a motion to amend that complied with Local Civil Rule 15.1. (ECF 54.) Plaintiff filed another motion to amend his complaint on December 23, 2019. (ECF No. 55.) Magistrate Judge Tonianne J. Bongiovanni granted Plaintiff's motion to amend his complaint on April 27, 2020. (ECF No. 58.) Plaintiff's amended complaint was filed on May 26, 2020 against the following defendants: Dr. Flora DeFilippo, Dr. Diana Schmidt, Dr. Scott Hornberger, Dr. Luis Nieves, Dr. Emma Bushong, Tina Cortes, J. Falvey, Officer Piepro Cupo, Officer J. Patterson, Officer Christmas, Officer C. Zetty, Officer S. Pazik, Officer W. Green, unknown Officer #1, unknown Officer #2, Sergeant O. Mendoza, Sergeant E. Mariconda, Sergeant Watters, Sergeant S. Patterson, Major C. Sears, Bruce Davis, Marven Ganesh, Amy Emrich, and David Richards. (ECF No. 59 "Amend. Compl.") Plaintiff's amended

---

[2] For the purposes of this Motion to Dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] The Court screened Plaintiff's original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed the claims against Administrators Bruce Davis, Amy Emrich and David Richards for unsanitary living conditions, and Davis, Emrich, Richards and Dr. Nuwochocco for "receding gums," as Plaintiff had not alleged facts to suggest any of the defendants were personally involved in said violations. (ECF No. 2, citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.")).

complaint raises a litany of new claims and new defendants that relate to an incident that happened after Plaintiff filed his first complaint. (*See* Amend. Compl.) The additional defendants[4] named in the amended complaint are not moving for dismissal in the motions to dismiss that are now before the Court.

**B. Factual History**

The Court summarizes the facts relevant to the claims addressed in the DOC Defendants' and the Mental Health Defendants' motions to dismiss. Plaintiff has been incarcerated at New Jersey State Prison ("NJSP") at all relevant times. (Amend. Compl. at 2.) Plaintiff submits that since his arrival at NJSP he has received inadequate medical treatment. (*Id.*) Plaintiff submits that doctors spend thirty to sixty seconds in a public setting treating Plaintiff. (*Id.*) Doctors are escorted by corrections officer who intrude on the dialogue. (*Id.*) Doctors are "antsy" and refuse to provide treatment. (*Id.*) Inmates eavesdrop, gleaning private facts to be weaponized for later. (*Id.* at 4.) Doctors are assigned to sections of the jail and not specific patients and Plaintiff cannot build a rapport with a specific doctor. (*Id.* at 3.) Plaintiff submits that Dr. DeFilippo has been responsible for depriving him of adequate medical treatment since September 2016. (*Id.*)

Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and is on the prisons' special needs roster. (*Id.* at 1.) On September 18, 2018, Plaintiff requested Dr. DeFilippo administer emergency treatment. (*Id.*) Plaintiff complained of emotional and psychiatric disturbance due to his sudden placement in a double bunk cell after two years in a single cell. (*Id.*) Plaintiff was concerned with the high risk of sexual harassment he would experience in a double cell. (*Id.* at 9.) Plaintiff submits the double bunk cell situation aggravated his PTSD, creating a

---

[4] J. Falvey, Officer J. Patterson, Officer Christmas, Officer C. Zetty, Officer S. Pazik, Officer W. Green, unknown Officer #1, unknown Officer #2, Sergeant O. Mendoza, Sergeant E. Mariconda, Sergeant Watters, Sergeant S. Patterson, and Major C. Sears.

hostile environment and his symptoms affected his behavior. (*Id.* at 1.) Plaintiff submits that Dr. DeFilippo forced him to reveal the reason behind his behavior in the presence of Officer D. Ciero and cellmate F. Chireno. (*Id.* at 4.) The contents of their conversation led Dr. DeFilippo to believe there was a substantial risk of harm, but Dr. DeFilippo left, escorted by Officer D. Ciero, having taken no action. (*Id.* at 1.) Dr. DeFilippo reported a "convoluted version" of the conversation to prison officials in order to have Plaintiff placed in segregation. (*Id.* at 4.) Plaintiff was taken into pre-hearing detention by Sergeant Manion and two officers. (*Id.* at 6.) On September 19, 2018, Plaintiff was advised by Sergeant DeJesus that Plaintiff was being charged with threatening. (*Id.*) Plaintiff submits that on or around September 20, 2018, he explained to Hearing Officer T. Cortes that no threats were made, and Plaintiff only requested Dr. DeFilippo for treatment of his PTSD. (*Id.*) Plaintiff submits that he requested witnesses to dispute the credibility of Dr. DeFilippo's accusation and was denied. (*Id.*) Plaintiff was denied cross-examination and confrontation of Dr. DeFilippo, Officer D. Ciero, cellmate F. Chireno, Dr. Hornberger, Dr. Nieves, Dr. Schmidt, and Dr. Bushong. (*Id.*) Plaintiff submits that he was denied Doctors Hornberger, Nieves, Schmidt, and Bushong because they were not present, but he wanted them to testify because they knew of Plaintiff's sexual harassment concerns in double cells. (*Id.* at 6-7.) Plaintiff submits that Officer D. Ciero's out of hearing statement indicated that he was not paying attention to the conversation between Plaintiff and Dr. DeFilippo. (*Id.* at 7.) Cellmate F. Chireno's stated that Dr. DeFilippo and Plaintiff's conversation was about sexual harassment concerns. (*Id.*) Plaintiff was found guilty and sentenced to 160 days administrative detention. (*Id.*) Plaintiff submits Dr. DeFilippo retaliated against Plaintiff. (*Id.* at 11.) During the session with Dr. DeFilippo and Plaintiff, Plaintiff asked the doctor to note his concerns and Dr. DeFilippo asked "[W]hy? So you can put it in your lawsuit?" (*Id.*)

Plaintiff appealed to administrator Bruce Davis citing further investigation was needed pursuant to "10A." (*Id.*) Plaintiff submits that the "ombudsman's office" had information that on September 18, 2018, Plaintiff had called the office with concerns of sexual harassment in double cells. (*Id.* at 10.) No documentation or information from the ombudsman's office was given to the disciplinary hearing officer. (*Id.*) Assistant Administrator Marven Ganesh denied Plaintiff's appeal, denied witnesses, denied request for mental health evaluation, and denied further investigation. (*Id.* at 7.)

Plaintiff submits his PTSD symptoms were left untreated and were apparent when he was left to mingle with other inmates. (*Id.* at 8.) Plaintiff submits it led to an attack on December 16, 2018, where Plaintiff was struck in the face multiple times until he defended himself. (*Id.*) Plaintiff was then placed in "supermax" Management Control Unit ("MCU") for an additional 120 days plus 120 days loss of recreational privileges. (*Id.* at 8-9.)

On January 22, 2019, after four months in segregation, Plaintiff suffered a severe emotional and psychiatric disturbance and requested psychiatry for an emergency around 12:00 p.m. (*Id.* at 5.) Plaintiff submits that Dr. Schmidt arrived and made her rounds around 12:30 p.m. without speaking to Plaintiff. (*Id.*) Around 3:30 p.m., Dr. Schmidt returned escorted by Officers Raylock and Connolly. (*Id.*) Officers Raylock and Connolly listened and participated in the dialogue between Plaintiff and Dr. Schmidt. (*Id.*) One of the officers interrupted the conversation to tell Plaintiff to "shut the fuck up and let [the doctor] talk!" (*Id.*)

Plaintiff submits that he was forced to strip search on the 7-wing tier by Officer Cupo, where anyone could watch if they chose to. (*Id.* at 9.) Plaintiff submits that this was a tactic to deter Plaintiff from going to the "rec-yard" for exercise. (*Id.*).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III. DECISION

Moving Defendants, DOC Defendants and Mental Health Defendants, make multiple arguments in their motions to dismiss. The Court considers each in turn.

### A. Mental Health Defendants' Motion to Dismiss

#### 1. Statute of Limitations

The Mental Health Defendants argue Plaintiff's claims one through five and ten relate to Plaintiff's disagreement with the mental health treatment he received at NJSP since his incarceration began in September 2016. (ECF No. 65-1 at 11.[5]) Plaintiff filed his initial complaint on February 8, 2019. Accordingly, the Mental Health Defendants argue Plaintiff's claims, to the

---

[5] Page numbers relevant to the motions to dismiss refer to the page numbers assigned by the electronic court filing system.

extent they relate the Mental Health Defendants deliberate indifference to Plaintiff's medical needs, should be dismissed pursuant to the applicable statute of limitations.

Section 1983 borrows the applicable state's personal injury statute of limitations. *See Vickers v. Childs*, 530 F. App'x 104, 105 (3d Cir. 2013). In New Jersey, that statute of limitations for personal injury claims is two years. *See* N.J. Stat. Ann. § 2A:14-2(a).

The Court acknowledges that Plaintiff does allege that he has not received adequate mental health care since he entered NJSP, however, Plaintiff's claims center around the incident that took place on September 18, 2018, where Plaintiff requested a medical visit and it resulted in Plaintiff being placed in disciplinary segregation. (*See generally* Amend. Compl.) Plaintiff filed his originally complaint on February 7, 2019, within two years of September 18, 2018. Accordingly, Plaintiff's claims are timely.

### 2. Eighth Amendment

Plaintiff's first claim submits Dr. DeFilippo was deliberately indifferent to Plaintiff's fear of being placed in a double bunk cell and the emotional and psychiatric disturbance it caused Plaintiff. (Amend. Compl. at 1-2.) Plaintiff submits that Dr. DeFilippo believed there was a substantial risk of harm and took no action. (*Id.*) Plaintiff's second claim submits Dr. DeFilippo provided inadequate medical treatment since Plaintiff's arrival at NJSP. (*Id.* at 2-4.) Plaintiff submits Dr. DeFilippo practiced "fly-by" psychiatry, only seeing Plaintiff for thirty to sixty seconds at a time in a public setting. (*Id.*) Plaintiff also notes that doctors are assigned to sections of the jail, and not individual patients, so they cannot build a rapport and trust. (*Id.* at 3.) Plaintiff lists Dr. Schmidt, Dr. Nieves, Dr. Hornberger, Dr. Bushong as subordinates of Dr. DeFilippo. (*Id.* at 3-4.) Plaintiff's fifth claim also submits Dr. DeFilippo provided inadequate medical care. (*Id.* at 8-9.) Plaintiff submits on September 18, 2018, following Plaintiff's session with Dr. DeFilippo

8

regarding Plaintiff's PTSD, the doctor failed to follow up on Plaintiff's condition after he was placed in segregation. (*Id.*) Plaintiff submits that his symptoms were left untreated and caused Plaintiff to have an altercation with an inmate and ultimately be placed in "supermax" MCU. (*Id.*)

The Mental Health Defendants argue that Plaintiff's Eighth Amendment claims should be dismissed for failure to state a claim. (ECF No. 65-1 at 12-19.)

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements

over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.... Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted). "[I]f necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." *Id.*

With respect to the serious medical need requirement, Plaintiff identifies himself as suffering from PTSD. Based upon Plaintiff's claim the Court is satisfied the serious medical need requirement has been satisfied at this juncture in the proceedings.

Plaintiff's submits Dr. DeFilippo has provided inadequate medical care since Plaintiff entered NJSP in September 2016. (Amend. Compl. at 3.) Plaintiff admits that he received mental health treatment, however, he takes issue with the length of time spent during his visits with Dr.

DeFilippo and the location of those visits. Plaintiff's claim establishes that Plaintiff received mental health care at NJSP. Because Plaintiff received frequent treatment for his mental health conditions, any perceived "inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978). Plaintiff's second claim against Dr. DeFilippo is dismissed without prejudice.

Plaintiff's second claim also names Scott Hornberger, Emma Bushong, Diana Schmidt, and Luis R. Nieves as Defendants. Dr. Nieves is not represented in the Mental Health Defendants' Motion to Dismiss, however, the Court dismisses claim two against Defendant Nieves, along with the Mental Health Defendants Hornberger, Bushong, and Schmidt, as Plaintiff fails to allege facts to suggest these Defendants were personally involved in the failure to provide adequate medical care claim. Plaintiff's only allegation against these Defendants in claim two is they are subordinates of Dr. DeFilippo. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").

Plaintiff's first and fifth claims relate to Plaintiff's claims that on September 18, 2018, he was experiencing PTSD symptoms and Dr. DeFilippo "believe[d] there was a substantial risk of harm." (Amend. Compl. at 1.) However, Dr. DeFilippo provided no treatment, instead, he told a "convoluted version [of their conversation] to prison officials" causing Plaintiff to be placed in disciplinary segregation. (*Id.* at 4.) Plaintiff submits that he was placed in segregation, and, for the entirety of his segregation, his symptoms were left untreated. (*Id.* at 8.) Plaintiff submits that Dr. DeFilippo never followed up with Plaintiff regarding his symptoms. (*Id.*) Plaintiff submits the lack of treatment caused a deterioration of his symptoms, which led to his placement in MCU segregation following an altercation with a fellow inmate. (*Id.* at 8-9.) Plaintiff submits his PTSD symptoms are still apparent and he still has not been treated. (*Id.* at 9.)

11

Upon review of Plaintiff's allegations against Dr. DeFilippo regarding the September 18, 2018 incident and after, they are sufficient to withstand the scrutiny on a motion to dismiss. Because the Court has not been presented with opportunity to review Plaintiff's relevant medical records, determinations regarding Plaintiff's need for treatment and what treatment was provided cannot be reached. While the lack of treatment could reflect a decision about the proper course of treatment, such allegations could also show an intentional refusal to provide care, which would establish deliberate indifference. *See Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346. As such, it simply cannot be determined on a motion to dismiss as to whether a cognizable claim of deliberate indifference has been stated. Dr. DeFilippo's request for dismissal of claims one and five will be denied.

### 3.   Fourteenth Amendment Right to Medical Privacy

Plaintiff's third claim submits his right to medical privacy was violated. (Amend. Compl. at 4-5.) Plaintiff states psychiatry sessions are performed on open housing units among other inmates and the doctors are always escorted by corrections officers. (*Id.*) Plaintiff submits the corrections officers "encroach on the dialogue forcing [Plaintiff] to reveal sensitive concerns, or forfeit treatment." (*Id.* at 4.) Plaintiff submits fellow inmates eavesdrop. (*Id.*) Plaintiff submits on September 18, 2018, Dr. DeFilippo forced Plaintiff to reveal the reason behind his behavior in the presence of cellmate F. Chireno and escorting officer D. Ciero. (*Id.*)

The Mental Health Defendants argue Plaintiff's claim should be dismissed because corrections officers escort doctors for safety purposes to achieve legitimate correctional goals and maintain intuitional security.[6] (ECF No. 65-1 at 20-21.)

---

[6] The purpose behind corrections officers escorting doctors is outside of the facts alleged in the complaint and is not considered by the Court. Fed. R. Civ. P. 12(d); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)

"An individual has a constitutional right to privacy which protects 'the individual interest in avoiding disclosure of personal matters.' We have long recognized the right to privacy in one's medical information . . . ." *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). "[A] prisoner's right to privacy in this medical information is not fundamentally inconsistent with incarceration." *Id.* at 317.

That being said, "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen . . . . [Plaintiff's] constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Id.* "[A]n inmate's constitutional right may be curtailed by a policy or regulation that is shown to be reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The Third Circuit has yet to define the parameters of a prisoner's right to privacy in his medical information. *See Smith v. Hayman*, 489 F. App'x 544, 549 (3d Cir. 2012) ("[*Delie*] did not establish any such rule with 'obvious clarity.'"). Courts construing prisoner's medical privacy claims have framed the right narrowly and have applied it to situations involving "an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through 'humor or gossip[.]'" *Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012) (quoting *Powell v. Shriver*, 175 F.3d 107, 112–13 (2d Cir. 1999)), aff'd, *Smith*, 489 F. App'x 544 (alteration in original). Most cases concern revealing an inmate's HIV-positive status or that they are transgender. *See, e.g., Doe*, 257 F.3d 309 (HIV-positive); *Powell*, 175 F.3d 107 (transgender identity); *Smith*, 2012 WL 1079634 (transgender identity). *Cf. Vines v. Columbus House et al.*, No. 13-3923, 2017 WL 2539409, at *14 (D.N.J. June 12, 2017)

(holding plaintiff did not state claim for disclosure of asthma, back problems, high blood pressure, and allergies to mold, dust, spray chemicals, and smoke).

Here, Plaintiff's condition was PTSD and he submits he was forced to reveal how he was feeling on September 18, 2018 in front of his cellmate and the escorting corrections officer. Plaintiff alleges generally that doctors see Plaintiff in an open setting where other inmates can eavesdrop and glean information to be weaponized against him at a later time. Assuming that Plaintiff's PTSD symptoms were disclosed in front of other inmates and corrections officers, the Court is unable, at this juncture, to find that PTSD is commonplace and does not constitute an "unusual medical condition, which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence." *Smith*, 2021 WL 1079634, at *18. The Defendants' argument that the corrections officers escorted Dr. DeFilippo for security purposes argues facts outside of Plaintiff's amended complaint and is an argument more appropriately raised in a motion for summary judgment. As such, it cannot be determined on a motion to dismiss as to whether a cognizable claim of violation of right to medical privacy has been stated. Dr. DeFilippo's request for dismissal of claim three is be denied.

### B. DOC Defendants Motion to Dismiss

#### 1. Eleventh Amendment

The DOC Defendants assert Plaintiff's claims against them in their official capacities should be dismissed because they are not "persons" subject to § 1983 liability.

A state official sued in his official capacity for monetary damages is not a "person" for purposes of Section 1983. *See House v. Fisher*, No. 14-2133, 2016 WL 538648, at *7 (M.D. Pa. Feb. 11, 2016) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-71 (1989)); *Goode v. New Jersey Dep't of Corr.*, No. 11-6960, 2015 WL 1924409, at *10 (D.N.J. Apr. 28, 2015)

(finding that state officials sued in official capacities for monetary damages are not "persons" within meaning of § 1983); *Johnson v. Mondrosch*, No. 13-3461, 2013 WL 12085239, at *3 (E.D. Pa. Dec. 3, 2013) (same). Therefore, Plaintiff's claims for monetary damages against the DOC Defendants in their official capacity are dismissed with prejudice.

Plaintiff's amended complaint further fails to seek specific injunctive relief. Rather, Plaintiff states only "all defendants are sued in their official capacity for declaratory and injunctive relief only," Plaintiff only moves for monetary relief and makes no claims for injunctive relief in the entirety of the amended complaint. (Amend. Compl. at 45.) Plaintiff does not argue for any specific injunctive relief until his opposition to Defendants' motions to dismiss. (*See* ECF No. 66.) In his opposition to Defendants' motions to dismiss, Plaintiff states that an example of injunctive relief sought would be for the Mental Health Defendants to provide adequate and confidential treatment, to record psychotherapy sessions, and to cease retaliatory behavior. (*Id.* at 7[7].) It is well-settled that Plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *cf. Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)").

> "[O]fficial-capacity actions for prospective relief are not treated as actions against the state." *Will*, 491 U.S. at 71 n. 10, 109 S. Ct. 2304 (quoting [*Kentucky v.*] *Graham*, 473 U.S. [159] at 167 n. 14, 105 S. Ct. 3099 [ (1985) ] ); *see also Ex parte Young*, 209 U.S. 123, 159–160, 28 S. Ct. 441, 52 L. Ed. 714 (1908). A state official against whom

---

[7] Page numbers relevant to Plaintiff's opposition to the motions to dismiss refer to the page numbers assigned by the electronic court filing system.

> prospective injunctive relief is sought, then, does not partake of the State's sovereign immunity under the Eleventh Amendment, and is considered a "person" for purposes of Section 1983.

*Grohs v. Yatauro*, 984 F. Supp. 2d 273, 281 (D.N.J. 2013). Plaintiff failed to state in his amended complaint any injunctive relief that was sought. Therefore, this Court will dismiss Plaintiff's official capacity claims against the Doc Defendants for prospective injunctive relief without prejudice.

## 2. Due Process Clause of the Fourteenth Amendment and Cruel and Unusual Punishment

Plaintiff's fourth claim submits a violation of his due process rights of the Fourteenth Amendment. (Amend. Compl. at 6-8.) Plaintiff claims that he explained to Officer T. Cortes that he made no threats and only wanted treatment and relief from PTSD. (*Id.* at 6.) Plaintiff submits he was denied cross-examination and confrontation of witnesses in violation of the Fourteenth Amendment. (*Id.*) Plaintiff submits that after being found guilty and sentenced to 160 days administrative segregation, he appealed and Assistant Administrator Marven Ganesh denied his appeal, denied witnesses, denied request for mental health evaluation and denied further investigation. (*Id.* at 7-8.) Plaintiff's fifth and ninth claims submit that Assistant Administrator Marven Ganesh upheld his disciplinary hearing sentence which was cruel and unusual punishment. (*Id.* at 8-9.) Plaintiff's seventh claim submits Assistant Administrator Marven Ganesh, along with defendants Davis, Emrich and Richards,[8] were deliberately indifferent to Plaintiff's sexual harassment concerns brought to them by the ombudsman's office. (*Id.* at 10-11.) Finally, Plaintiff eighth claim submits that Assistant Administrator Marven Ganesh, along with defendants Davis,

---

[8] The DOC Defendants' motion to dismiss only address this claim as it pertains to Marven Ganesh, as such, the Court will not analyze whether to dismiss the claim against Bruce Davis, Amy Emrich, and David Richards.

Emrich and Richards[9], had information that Plaintiff called ombudsman's office on September 18, 2018, regarding his fear of sexual harassment, and failed to turn it over at Plaintiff's disciplinary hearing in violation of his due process rights. (*Id.* at 10.)

DOC Defendants' motion to dismiss argues that the Court lacks jurisdiction over these claims because Plaintiff failed to appeal the administrative decision placing him in segregation to the appropriate forum, the New Jersey Superior Court, Appellate Division. (ECF 64-1 at 9.) Although DOC Defendants allege Plaintiff has failed to state a claim regarding these claims, they do not elaborate. However, the Court may address them under 28 U.S.C. § 1915. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (noting that the court "shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim on which relief may be granted" (emphasis added)).

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. When bringing a § 1983 suit based on a violation of the Fourteenth Amendment, the plaintiff must identify or allege the deprived protected interest. *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989). Without the presence of a protected interest, a § 1983 due process claim simply cannot stand. *Id.* The Third Circuit has recognized that "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). Only if the sanction "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" is a protected liberty interest implicated. *Sandin*, 515 U.S. at 484.

---

[9] The DOC Defendants' motion to dismiss only address this claim as it pertains to Marven Ganesh, as such, the Court will not consider whether the claim should be dismissed against Bruce Davis, Amy Emrich, and David Richards.

In light of *Sandin*, prison disciplinary segregation will violate the protected liberty interest of the Fourteenth Amendment only if it dramatically departs, in length time or otherwise, from basic prison conditions and imposes atypical, significant hardship on the inmate. This court and others within this circuit, applying *Sandin* in various actions, have found no merit in the procedural due process claims presented. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); *Griffin v. Vaughn*, 112 F.3d 703, 706–708 (3d Cir. 1997) (no liberty interest avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); *Young v. Beard*, 227 F. App'x 138 (3d Cir. 2007) (aggregate 980 days in disciplinary segregation did not violate the due process clause).

Plaintiff was placed in disciplinary segregation for 160 days. (Amend. Compl. at 8.) While Plaintiff's amended compliant sets forth due process allegations, such as the right to call witness, the claim fails to delineate facts from which the Court can conclude that Plaintiff's disciplinary confinement are materially different from what the Supreme Court found to be "not typical" in *Sandin*. Without some allegations to suggest that the length of that placement was excessive, or was subject to continuous harsh penalties for a sufficient period of time to amount to an extreme divergence from the normal incidents of committed life, Plaintiff fails to present a cognizable claim for a denial of due process as he has not presented a valid liberty interest which has been impugned, and his procedural due process claim against DOC Defendants Cortes and Ganesh is dismissed without prejudice. *See Deavers v. Santiago*, 243 F. App'x 719, 721-22 (3d Cir. 2007).

Plaintiff's fifth, seventh and ninth claims allege that Assistant Administrator Marven Ganesh knew of Plaintiff's sexual harassment fears and upheld the decision to place Plaintiff in

administrative segregation which amounted to deliberate indifference and cruel and unusual punishment.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–05. However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer*, 511 U.S. at 837. Plaintiff fails to allege Ganesh denied Plaintiff medical care in anyway. Plaintiff only submits that Ganesh was aware of Plaintiff's fear of sexual harassment and still upheld the decision to place him in segregation. That fact does not submit that Ganesh was deliberately indifferent to Plaintiff's medical needs or had any part in an alleged denial of medical care. Claims five, seven and nine deliberate indifference and cruel and unusual punishment against DOC Defendant Ganesh is dismissed without prejudice.

The DOC Defendants' motion to dismiss does not address an Eighth Amendment failure to protect claim and Plaintiff does not explicitly raise one, however, the Court construes Plaintiff's allegations as a failure to protect claim regarding Plaintiff's fears of sexual harassment.

Plaintiff's claim is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a convicted state prisoner who has been granted *in forma pauperis* status and raises claims against state employees. According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for

failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

To assert an Eighth Amendment failure to protect claim, an inmate must show that he is "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant was deliberately indifferent to the risk. *See Farmer*, 511 U.S. at 833, 837; *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The Third Circuit has stated that:

> "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers–Capitol* [*v. Whetzel*], 256 F.3d [120] at 125 [ (3d Cir. 2001) ]. It is not sufficient that the official should have known of the risk. *Id.* at 133. A plaintiff [must] prove an official's actual knowledge of a substantial risk to his safety . . . .

*Bistrian*, 696 F.3d at 367-69; ("[plaintiff] plausibly alleges that certain prison officials actually knew that he faced an excessive risk of harm by being placed in the SHU recreation yard [with the inmates who assaulted him] because he repeatedly advised (both verbally and in writing) [the prison officials] ... of the multiple threats [those particular inmates made to him]"); *see also Miller v. Ricci*, No. 11-0859, 2011 WL 1655764, at *10 (D.N.J. Apr. 28, 2011) ("To plead an Eighth Amendment failure to protect claim a plaintiff must plead facts raising a plausible inference of . . . the defendants' deliberate indifference to that particular risk of harm").

20

Plaintiff does not allege sufficient facts to support a claim of failure to protect. Plaintiff only submits that he informed DOC Defendant Ganesh that Plaintiff feared sexual harassment if he was to be placed in a double cell and that Davis, Emrich and Richards, had information that Plaintiff called ombudsman's office on September 18, 2018, regarding his fear of sexual harassment, and failed to turn it over at Plaintiff's disciplinary hearing. (*Id.* at 10.)

Plaintiff does not assert any facts of sexual harassment taking place, only that he feared sexual harassment. Plaintiff does not submit any facts that the defendants knew Plaintiff was at an excessive risk of harm and was deliberately indifferent to that risk. Plaintiff's claim thus fails woefully short of meeting the Rule 12(b)(6) standard under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Thus, Plaintiff's claim of failure to protect against DOC Defendant Ganesh and defendants Bruce Davis, Amy Emrich, and David Richards is dismissed.

### 3. Fourth Amendment Right to Privacy and Cruel and Unusual Punishment

Plaintiff's sixth claim submits Officer Cupo violated his right to privacy and Eighth Amendment right to be free from cruel and unusual punishment by subjecting him to a strip search where other inmates and officers could see. (Amend. Compl. at 9.)

DOC Defendant Cupo agues Plaintiff has limited right to privacy and has administrative remedies available to him, which he failed to pursue. (ECF 64-1 at 11-12.)

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Pretrial detainees and convicted prisoners, however, only have limited rights under the Fourth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979) (inmates "retain some Fourth Amendment rights upon

commitment to a corrections facility . . . ."); *Russell v. City of Phila.*, 428 F. App'x 174, 177 (3d Cir. 2011) (prisoner could state a Fourth Amendment claim based on a strip and cavity search). To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992); *see also Robinson v. Ricci*, No. 08-2023, 2012 WL 1067909, *16-17 (D.N.J. Mar. 29, 2012). To determine whether a search was "reasonable" within the meaning of the Fourth Amendment requires "balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Bell v. Wolfish*, 441 U.S. 520, 560 (1995); *Youngberg v. Romeo*, 457 U.S. 307, 321–22, (1982) (applying the balancing test from *Bell v. Wolfish* to involuntarily civilly committed defendant). The strip search in *Bell* occurred when the detainee returned from a contact visit with someone outside the institution, a scenario which presented an opportunity for smuggling contraband into the facility. *Bell*, 441 U.S. at 560. This threat conferred a "strong governmental justification" for invading the detainees' privacy. *See Randall v. Cty. of Berks, Pennsylvania*, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (citing *Bell*, 441 U.S. at 559). The Supreme Court re-emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328 (2012). Where security is involved, "deference must be given to the officials in charge of the jail unless there is substantial evidence demonstrating their response to the situation is exaggerated." *Id.* at 330 (citation and internal quotation marks omitted). Thus, in *Florence*, the Supreme Court held that a jail policy of requiring that persons admitted to a jail remove their clothing and expose their genital areas for visual inspection as a routine part of the intake process does not violate the Fourth Amendment. *See Florence*, 566 U.S. 318.

Where a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan*, 428 F. App'x at 199-200 (explaining that excessive force claim arising from strip search may proceed under either Fourth or Eighth Amendments, but latter is "the primary source of protection after an individual's conviction"); *see also Florence*, 566 U.S. at 339 (Eighth Amendment may be implicated where a strip search is carried out in such a way as to intentionally humiliate or abuse a prisoner, citing *Hudson v. Palmer*, 468 U.S. 517, 528 (1984)); *Robinson*, 2012 WL 1067909, at *16-17 (in addition to possible Fourth Amendment violation, "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner). Courts have found that, in certain circumstances, prisoner nudity can constitute cruel and unusual punishment under the Eighth Amendment. *See Solan v. Ranck*, 2007 WL 4111424, at *7-8 (M.D. Pa. Nov. 16, 2007), *aff'd*, 326 F. App'x 97 (3d Cir. 2009). The "basic right of privacy" is implicated when a prisoner is forced to be unclothed and, when done to humiliate the prisoner can violate the Eighth amendment. *Id.* at *9.

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Hudson*, the absence of a serious injury to the inmate is relevant to the Court's inquiry but does not end it. *Id.* However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimus uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

23

Plaintiff's claim that he was subjected to a strip search on 7-wing tier by Officer Cupo does not amount to a Fourth Amendment. In determining whether a particular strip search policy or action is reasonable, courts must balance an inmate's constitutional right to privacy and the needs of the institution to maintain safety and security. *See Florence*, 566 U.S. at 326–27. Specifically, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. At this point, Plaintiff does not allege sufficient factual allegations to state a claim under the Fourth Amendment. Plaintiff states that "anyone could watch if they chose to," and that the strip search was to deter the use of the recreation yard. (Amend. Compl. at 9.) Plaintiff does not provide any other factual allegations that would, if true, demonstrate that the search was unreasonable. Considering the two facts alleged by Plaintiff it is not unreasonable that a strip search may be necessary when inmates are comingling in the recreation yard. Plaintiff does not allege facts that his search was outside what is reasonable. *See Florence*, 132 S.Ct. at 328. This Court will dismiss Plaintiff's § 1983 Fourth Amendment strip search claim for failure to state a claim upon which relief may be granted.

Plaintiff's claim also does not amount to an Eighth Amendment violation. Plaintiff also does not allege that Officer Cupo used any force, let alone excessive force as necessary for an Eighth Amendment violation. *See Hudson*, 503 U.S. at 7 (noting that, to state an Eighth Amendment claim for excessive force, an inmate must allege that force was used maliciously and sadistically to cause harm.) Plaintiff's Amended Complaint does not state a Fourth or Eighth Amendment violation and the conduct complained of fails to rise to the level of a constitutional violation cognizable under § 1983. The Court will dismiss claim six against Officer Cupo.

### C. Severing Claims Eleven Through Twenty-Eight

Plaintiff's filed his amended complaint on May 26, 2020 against the following defendants: Dr. Flora DeFilippo, Dr. Diana Schmidt, Dr. Scott Hornberger, Dr. Luis Nieves, Dr. Emma Bushong, Tina Cortes, J. Falvey, Officer Piepro Cupo, Officer J. Patterson, Officer Christmas, Officer C. Zetty, Officer S. Pazik, Officer W. Green, unknown Officer #1, unknown Officer #2, Sergeant O. Mendoza, Sergeant E. Mariconda, Sergeant Watters, Sergeant S. Patterson, Major C. Sears, Bruce Davis, Marven Ganesh, Amy Emrich, and David Richards. (*See generally* Amend. Compl.") Plaintiff's amended complaint raises a litany of new claims and new defendants that relate to an incident that happened after Plaintiff filed his first complaint. (*Id.*) Plaintiff's eleventh through twenty-eighth claims stem from a strip search that occurred on March 11, 2019, after this case was already pending. (*Id.*) Plaintiff raises sexual humiliation, violation of right to an attorney, due process violation, cruel and unusual punishment, retaliation, violation of medical privacy, and threat of physical violence claims. (*Id.*) These claims do not relate to the claims in Plaintiff original complaint and they raise multiple new defendants who have not been served in this matter. These unrelated claims are inappropriately raised in the instant matter.

Rule 18(a) controls the joinder of claims. In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party." Rule 20(a)(2) controls the permissive joinder of <u>defendants</u> in *pro se* prisoner actions as well as other civil actions. Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2) (emphasis added). *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x. 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d

605 (7th Cir.2007). In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

*Williams v. Hebbon*, No. CIV.A. 09-2103 AET, 2011 WL 1930564, at *5 (D.N.J. May 19, 2011) (citing 7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009)). The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Id.* (citing *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002)). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x. 436 (3d Cir.2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). "[M]isjoinder of parties is not a ground for dismissing an action. Instead, a court faced with a complaint improperly joining parties 'may at any time, on just terms, add or drop a party. The court may also sever any claims against a party.'" *Williams*, 2011 WL 1930564, at *5.

Therefore, the Court finds it prudent to sever claims eleven through twenty-eight because they have been misjoined as they do not arise from the same transaction and relate to new defendants. *See* Fed. R. Civ. P. 20; *see also Aristeo v. Raines*, No. 15-4115 (RMB/JS), 2016 WL 430568, at *12 (D.N.J. Feb. 3, 2016) (severing *pro se* complaint into two separate causes of action where the cases appeared to have been misjoined). The Clerk of the Court shall therefore be ordered to open a separate proceeding under 42 U.S.C. § 1983 for consideration of grounds eleven

through twenty-eight so the appropriate defendants can be served and the matter can be screened by the Court.

### D. Plaintiff's Motion to Strike

Plaintiff filed a motion to strike Defendants defenses as insufficient and redundant pursuant to Fed. R. Civ. P. 12(f)(2). (ECF No. 66 at 3.) Plaintiff's motion is procedurally improper.

Federal Rule of Civil Procedure 12(f) provides: "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added.) Plaintiff moves to strike defenses in the Defendants' motions to dismiss. (See ECF No. 66.) The Federal Rules of Civil Procedure include a list of permitted "pleadings," which does not include motions, briefs supporting motions, or attached exhibits, and addresses motions under a separate subsection. *See* Fed. R. Civ. P. 7. Plaintiff's motion to strike does not attack a pleading, rather it attacks motions to dismiss, which is procedurally improper. *See, e.g.*, *Gresko v. Pemberton Township Board of Education*, 19-cv-00638, 2020 WL 6042317, * 3 (D.N.J. Oct. 13, 2020); *Faulman v. Sec. Mut. Fin. Life Ins. Co.*, 2006 WL 2482926, *3 (D.N.J. Aug. 28, 2006). Therefore, Plaintiff's motion to strike is denied.

## IV. CONCLUSION

Based on the foregoing, the Mental Health Defendants' Motion is **GRANTED** the Eighth Amendment deliberate indifference claims as they relate to the Mental Health Defendants Hornberger, Nieves, Bushong and Schmidt and **DENIED** as it relates to the Fourteenth Amendment medical privacy claim against Dr. DeFilippo and to the Eighth Amendment deliberate indifference claims as they relate to Dr. DeFilippo.[10] The claims against the DOC Defendants  in

---

[10] Plaintiff's tenth claim alleging retaliation involving Dr. DeFilippo remains as Dr. DeFilippo did not move for dismissal of that claim.

their official capacity are dismissed without prejudice. The DOC Defendants' Motion is **GRANTED**. A failure to protect claim regarding fear of sexual harassment against DOC Defendant Ganesh and defendants Bruce Davis, Amy Emrich, and David Richards is **DISMISSED**.

Claims one and five - Eighth Amendment deliberate indifference remain against Dr. DeFilippo. Claim three - Fourteenth Amendment right to medical privacy remains against Dr. DeFilippo. Claim seven - deliberate indifference to sexual harassment fears remains against defendants Bruce Davis, Amy Emrich, and David Richards. Claim eight - due process violation against Bruce Davis, Amy Emrich, and David Richards remains. Claim ten - retaliation remains against Dr. DeFilippo.

Claims eleven through twenty-eight are severed into a separate proceeding under 42 U.S.C. § 1983 for consideration of grounds so the appropriate defendants can be served and the matter can be screened by the Court.

Plaintiff's motion to strike is **DENIED**.

An appropriate order accompanies this Opinion.


Date: February 26, 2021

_/s/Brian R. Martinotti_
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**
